GAGER and others *against* WATSON :

#### IN ERROR.

*A* having recovered a judgment against *B*, committed him to prison ; and *B* was discharged from imprisonment, on taking the poor debtor's oath. *B*, at the same time, had a judgment against *C*, for a greater amount. *A* then brought foreign attachment to attach the debt due from *C* to *B*. After such attachment, *B* assigned this debt to *D*, his attorney in the suit, and took out execution on the judgment, and gave it to an officer, threatening to enforce the collection of it. On a bill in chancery, brought by *A*, for a stay of proceedings on such execution, and for an appropriation of the judgment debt in payment of *A*'s debt against *B*, it was held, 1. that a judgment debt in the situation of *B*'s debt against *C*, may be attached and holden, by foreign attachment ; 2. that as there was adequate remedy at law, by foreign attachment, the bill in chancery was not sustainable ; 3. that a court of chancery had no power to anticipate the result of the process by foreign attachment, and compel *C* to pay over the debt to *A*, which both *B* and *C* had a right to contest at law ; 4. that neither *D*, the attorney of *B*, nor the officer who had the execution, had any lien on the judgment, as against *A*.

THIS was a bill in chancery, brought originally, by *Watson*, against *William T. Gager, Moses Smith, William W. Ellsworth* and *John Butler*, before the county court, for an injunction and other relief.

The facts were these. The plaintiff having recovered a judgment and taken out execution against *Gager*, for 28 dollars, 68 cents, had caused him to be committed to prison ; and he was discharged, on taking the poor debtor's oath.

Shortly afterwards, *Gager* obtained a judgment against *Smith*, for 50 dollars, or more. The plaintiff then brought foreign attachment on his judgment against *Gager*, leaving copies with *Smith*, as *Gager's* debtor, and thus acquired a lien on *Smith's* debt to *Gager* for the satisfaction of his own debt against *Gager*. After the service of this process, *Gager* assigned the *Smith* debt (if by law he could assign it,) to *W. W. Ellsworth*, Esq., as security for a debt due him ; and then took out execution on the judgment against *Smith*, threatening to levy and collect it. Mr. *Ellsworth* had been employed by *Gager*, as his attorney, in his suit against *Smith ;* and he was indebted to Mr. *Ellsworth*, for disbursements and fees in that suit, about 30 dollars. *Butler*, the officer, to whom the execution against *Smith* was delivered to be executed, levied it on the real estate of the debtor, which he was proceeding to set off, when his proceedings were arrested, by a temporary injunction, at the suit of the present plaintiff ; and his fees remain unsatisfied.

The object of the bill was, to obtain a perpetual injunction against proceedings under the execution, and for the application, in payment of the plaintiff's debt against *Gager*, of an equal amount of *Gager's* judgment against *Smith*.

The county court passed a decree for the plaintiff, in conformity to the prayer of the bill. The defendants brought a writ of error in the superior court ; and the case was reserved for the advice of this court.

*W. W. Ellsworth*, for the plaintiffs in error, contended, 1. That the statute of foreign attachments does not reach this case. The statute applies only where there has been a payment, and a defence in court by the debtor, founded on that fact.

2. That equity does not interfere to effect a set-off not provided for and efficacious at law. *Donovan* v. *Finn*, 1 *Hop. Ch. Rep.* 59. *Hadden* v. *Spader*, 20 *Johns. Rep.* 554.

3. That equity will not interfere against the equity of the attorney and the officer. The attorney has a lien on the execution, as well as on the judgment and the papers. *Rumrill* v. *Huntington*, 5 *Day* 165. *Schoole* v. *Noble* & al. 1 *H. Bla.* 23. *Read* v. *Dupper*, 6 *Term Rep.* 362. *Emden* v. *Darley*, 1 *New Rep.* 22. *Hall* v. *Ody*, 2 *Bos. & Pull.* 28.

*Hartford,*
*June, 1836.*

Gager
*v.*
Watson.

*Parsons,* for the defendant in error, insisted, 1. That the process of foreign attachment was properly resorted to, in this case. A liquidated debt was due from *Gager* to *Watson,* and a like debt from *Smith* to *Gager.*

2. That the plaintiff having done all that he could do at law, is now entitled to the aid of a court of chancery to secure to him the appropriation of a judgment debt due to his debtor. *Egberts* v. *Pemberton* & al. 7 *Johns. Ch. Rep.* 208. 210. *McDermott* & al. v. *Strong* & al. 4 *Johns. Ch. Rep.* 687.

3. That an attorney, in this state, has no lien on the *judgment* for his fees and disbursements in the suit. It has never been extended here beyond the *papers* in his hands. *Rumrill* v. *Huntington,* 5 *Day* 163. 165. In *England,* it would not prevent the debtor's paying over the money to the creditor, without notice. *Doug.* 104. *Welsh* v. *Hole, Doug.* 238. *Howell* & al. v. *Harding,* 8 *East* 362.

CHURCH, J. The plaintiff in the court below, as the foundation of the relief he seeks, alleges, that *William T. Gager* was indebted to him, by judgment, and had been legally discharged from imprisonment on that judgment; that *Moses Smith* was indebted to said *Gager,* by a judgment upon which an execution had been duly issued; that the plaintiff, by a process of foreign attachment against said *Gager,* had attached the judgment debt due from *Smith* to *Gager,* to satisfy the same judgment debt from which said *Gager's* body had been released from imprisonment; which proceedings of foreign attachment are yet pending; that subsequent to said attachment, said *Gager* had assigned the debt due to him from said *Smith,* and which the plaintiff had attached, to *W. W. Ellsworth,* Esq. his attorney, and had caused the execution against *Smith* to be placed in the hands of an officer for collection, threatening to enforce and collect the same; and the plaintiff prays for an injunction against further proceedings against said *Smith* upon said execution, and also for an application in payment of the plaintiff's debt against said *Gager* of so much of the judgment in favour of *Gager* against *Smith,* as may be sufficient to satisfy the same.

The plaintiff proceeds upon the supposition, that the judgment debt due from *Smith* to *Gager* is attachable, by process of foreign attachment, and that by virtue of said process, he has acquired a lien upon it, which he seeks to protect. This

presents the first question suggested by this record, which is, whether a judgment debt in the situation of the one here described, may be attached and holden, by foreign attachment? We think it may.

1. By the custom of *London,* from which our foreign attachment system was principally derived, it is said, that a judgment debt cannot be attached; and the same has been holden, by the courts in *Massachusetts,* under the trustee process of that state. 9 *Petersd. Abr.* 712. *Sharp* v. *Clark,* 2 *Mass. Rep.* 94. *Prescott* v. *Parker,* 4 *Mass. Rep.* 170. *Franklin* v. *Ward* & al. 3 *Mason,* 136.

A fair, and, as we think, very obvious construction of our statute on this subject, as well as the general policy of our attachment laws, lead us to a different conclusion. It is enacted, that "where debts are due from *any person* to an absent and absconding debtor, it shall be lawful for any creditor to bring his action against such absent and absconding debtor, &c.;" and that "*any debt* due from such debtor to the defendant, shall be secured to pay such judgment as the plaintiff shall recover." The provisions of this statute were extended, in 1830, to the attachment of debts due to such persons as should be discharged from imprisonment. The language of this statute clearly embraces judgment debts, as well as others; and the reason and equity of it are equally extensive. A judgment debt is liquidated and certain; and, in ordinary cases, little opportunity or necessity remains for controversy respecting its existence, character or amount. The policy of our laws has ever required, that all the property of a debtor not exempted by law from execution, should be subject to the demands of his creditors; and that every facility, consistent with the reasonable immunities of debtors, should be afforded to subject such property to legal process. And this policy is at least as obvious now, as formerly; for the rigour of former laws regarding imprisonment for debt has been, and probably will be still more, relaxed.

It is true, as has been contended, that to subject judgment debts to attachment, and especially, those upon which executions have issued, may, in some cases, produce inconvenience and embarrassment to debtors, as well as to creditors. Such consequences have resulted from the operation of our foreign attachment system, in ordinary cases; and this was foreseen and has been known to our legislators, by whom this system has

been introduced, continued and extended ; but the general interest of the community in this respect, has been considered as paramount to the possible and occasional inconveniences to which individuals may be sometimes subjected.    A judgment debtor, in such cases, is not without relief : he may resort, whenever serious danger or loss is apprehended, either to his writ of *audita querela,* or to the powers of a court of chancery, for appropriate relief.

But although we recognise the principle for which the plaintiff contends, that a judgment debt may be attached and sequestered, by the process of foreign attachment ; yet it is obvious, that this principle is fatal to the remedy he here pursues ; for it proves, that he has adequate remedy at law, and of course, cannot have relief in equity.    The plaintiff can pursue his attachment, and is under no necessity of asking an injunction to stay proceedings on the execution against *Smith.*    *Smith* alone can be injured, by these proceedings ; and if he apprehends danger, may seek his relief.    This furnishes a reason sufficient for the reversal of the decree of the county court.

It was urged in argument, that if no lien had been fixed upon the judgment debt due from *Smith* to *Gager,* by the proceedings under the foreign attachment ; and although because the proceedings were still pending, no judgment had been yet rendered or demand made upon the garnishee so as to subject him at law ; yet, the plaintiff having done all in his power, was entitled to the interference of a court of equity, and to the application of so much of the debt due from *Smith* to *Gager* as would be sufficient to satisfy his demand against him.    We think this position cannot be sustained.    If no lien was created, by the attachment, then the plaintiff had no right at all to the debt due to *Gager :* his rights were no greater than the rights of *Gager's* other creditors.    A court of chancery has no power to sequestrate a debt for the benefit of a creditor, unless some special ground of equitable justification exists, and thus assume what belongs to a court of law, under the statutes of foreign attachment.    *Donovan* v. *Finn* & al. 1 *Hop. Ch. Rep.* 59.    And although a lien by the foreign attachment, was created, so as to secure the debt due to *Gager* to respond the plaintiff's judgment ; yet the county court had no power to anticipate the result of the process of foreign attachment, and by its decree, compel the garnishee to pay over the

debt to the plaintiff, which both *Gager* and the garnishee *Smith*, had a right to contest at law. This was leaving the plaintiff prosecuting his foreign attachment, while the fund or debt attached was withdrawn from its operation. Here again, the judgment of the county court was erroneous.

From the view we have already taken of this case, it does not become necessary to decide upon the claims of lien interposed by Messrs. *Ellsworth* and *Smith*, the attorneys of *Gager*, and by *Butler*, the officer. But as a question of some practical importance is involved in these claims, we have believed it our duty to dispose of it. We are of opinion, that no lien exists in favour either of attorneys or officer, in the present case, as against the present plaintiff. An attorney, as against his client, has a lien upon all papers in his possession for his fees and services peformed in his professional capacity, as well as upon judgments received by him. But the attorney's lien upon judgments is subject to the equitable claims of the parties in the cause, as well as to the rights of third persons, which cannot be varied or affected, by such lien. 2 *Scho. & Lef.* 279. 6 *Mod.* 98. *Schoole* v. *Noble*, 1 *Hen. Bl.* 122. 2 *Petersd. Abr.* 659. *Mitchell* v. *Oldfield*, 4 *Term Rep.* 123. *Rumrill* v. *Huntington*, 5 *Day* 163.

We advise, that the decree of the county court in this case, be reversed.

BISSELL, HUNTINGTON and WAITE, Js. were of the same opinion.

WILLIAMS, Ch. J. gave no opinion, being related to a party to the suit.

Decree to be reversed.